**UNITED STATES DISTRICT COURT** **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:26-CR-38 (6) |
| | § | |
| KELLEE SIMS | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Kellee Sims's ("Sims") Motion in Limine (#436). The Government filed a Response (#462). Having considered the motion, the Government's response, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I. Background

On June 4, 2025, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned an Indictment (#1) naming Brooke Crawford ("Crawford"), Rian Graham ("R. Graham"), Troi Graham ("T. Graham"), and two other codefendants. On February 5, 2026, a First Superseding Indictment (#110) was issued, which added Sims and two other codefendants. On September 9, 2026, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a single-count Second Superseding Indictment (#225) charging Crawford, R. Graham, T. Graham, Sims (collectively, "Defendants"), and the four other codefendants with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349. Jury selection and trial are currently scheduled to begin on November 30, 2026.

II. Analysis

The court has inherent authority to manage the course of trials and thus rule on motions in limine. *See United States v. Logwood*, No. 3:24-CR-00017, 2025 WL 1908976, at *1 (W.D.

La. July 10, 2025) (citing *Coates v. TNT Crane & Rigging, Inc.*, No. MO:22-CV-00018-DC, 2023 WL 11915701, at *1 (W.D. Tex. 2023)). A motion in limine "is not a definitive ruling on the admissibility of evidence." *7X Cattle Co., L.L.C. v. Brandstadt*, No. 6:22-cv-396-JDK, 2025 WL 2269797, at *1 (E.D. Tex. July 15, 2025); *Green Acres Baptist Church, Inc. v. Brotherhood Mut. Ins. Co.*, No. 6:23-cv-566-JDK, 2025 WL 747818, at *1 (E.D. Tex. Jan. 17, 2025); *Ogden v. Cozumel, Inc.*, No. A-18-CV-00358-DAE-SH, 2019 WL 5295495, at *1 (W.D. Tex. Oct. 18, 2019) (stating that "[a]ll rulings on motions in limine are preliminary evidentiary rulings [and are] not final" (citing *Blue Spike, LLC v. Audible Magic Corp.*, No. 6:15-CV-584, 2016 WL 3877291, at *1 (E.D. Tex. June 27, 2016))). Rather, an order granting a motion in limine is an order requiring the proponent of the evidence to approach the bench and seek leave of court prior to offering the disputed evidence at trial. *7X Cattle Co., L.L.C.*, 2025 WL 2269797, at *1; *Green Acres Baptist Church, Inc.*, 2025 WL 747818, at *1; *see King v. King*, 117 F.4th 301, 306 (5th Cir. 2024); *Rojas v. Richardson*, 703 F.2d 186, 188 (5th Cir. 1983).

The United States Court of Appeals for the Fifth Circuit has observed that "[m]otions in limine are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial." *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980); *see Rojas*, 703 F.2d at 189; *Smith v. China Mfrs. All. L.L.C.*, No. 2:19-CV-01111, 2025 WL 1839905, at *2 (W.D. La. July 3, 2025). Nonetheless, they are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues. *United States v. Spotted Horse*, 916 F.3d 686, 693 (8th Cir. 2019); *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). Motion in limine rulings "are not binding on the trial judge, and the judge may

always change [her] mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 764 n.3 (2000); *accord Luce v. United States*, 469 U.S. 38, 41 (1984) (noting that *in limine* rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner); *United States v. Thornhill*, 940 F.3d 1114, 1121 (9th Cir. 2019); *see Jordan v. Maxfield & Oberton Holdings, L.L.C.*, 977 F.3d 412, 418 (5th Cir. 2020).

"[M]otions in limine may [also] be used to secure a pretrial ruling that certain evidence is admissible." *United States v. Barefoot*, No. 3:22-CR-13-DPJ-LGI, 2023 WL 6319893, at *1 (S.D. Miss. Sept. 28, 2023) (quoting *Bond Pharmacy, Inc. v. AnazaoHealth Corp.*, No. 3:11-CV-58, 2012 WL 3052902, at *2 (S.D. Miss. July 25, 2012); *see United States v. Zelaya*, No. 22-77, 2024 WL 4719502, at *2 (E.D. La. Nov. 8, 2024); *United States v. Kirk*, No. SA11-CR-449(2), 2013 WL 6198221, at *1 (W.D. Tex. Nov. 27, 2013) ("[T]he Government's Motion for Early Admissibility Rulings asked the Court to rule on the admissibility of certain evidence prior to trial and as such, it was, for all intents and purposes, a motion in limine.").

A. Sims's Motion in Limine

1. Request One

In her first request, Sims asks that the court prohibit any reference to prior convictions and other acts by Riley Graham. She contends that the prior actions do not bear on whether she knew or did not know of the alleged conspiracy. The Government asserts that such evidence, as set forth in its Brief in Support of Admissibility of Defendant's Prior Felony Convictions Under Rule 404(b) (#281), can be used to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b). The Government

maintains that it intends to introduce this evidence to prove that Sims knew of the conspiracy before joining it.

A defendant may not be proven guilty by "showing that [she] associates with unsavory characters." *United States v. Romo*, 669 F.2d 285, 288 (5th Cir. 1982). Therefore, a third-party's criminal conviction without evidence connecting that person to an alleged conspiracy is irrelevant to any issue in a case and is highly prejudicial. *See United States v. Portilo*, 969 F.3d 144, 178 (5th Cir. 2020). When a conspiracy is charged, however, evidence of a defendant's coconspirator's action are "often highly relevant." *Id.* A defendant's guilty knowledge and participation in the conspiracy "may be inferred from the development and collation of circumstances." *Id.* This includes evidence of the defendant's presence and association with other members of the conspiracy. *Id.* The Fifth Circuit has held "evidence about an associate's guilt is admissible so long as it has some tendency to establish the elements of a conspiracy" against the defendant. *Id.*

Here, the challenged evidence is relevant to the conspiracy charge against Sims. The Government maintains that it will introduce this evidence to prove that Riley Graham led the conspiracy to commit wire fraud from prison and that Defendants knew of his criminal convictions prior to joining the conspiracy. First, the Government seeks to introduce his prison disciplinary record—which shows that Riley Graham possessed a contraband cell phone in prison. While Sims contends this evidence is Rule 404(b) evidence, it is more likely intrinsic evidence. As discussed below, Riley Graham used a contraband cell phone to contact coconspirators and alleged victims from prison. As this was an act done in furtherance of the conspiracy, it is admissible against Sims.

Next, the Government seeks to introduce two of Riley Graham's prior felony convictions. In *Portillo*, the court held that the evidence of a third-party's criminal convictions was especially relevant where defendants asserted that they were unaware of criminal activity. *Id.* at 179. Specifically, the evidence was relevant when there is a temporal proximity to the third-party's conduct and the charged conspiracy. *Id.*

In the present case, the Government contends that Defendants, specifically Crawford and Sims, have signaled their plans to present a defense indicating that they were "unknowing employees" of the Mildred Drake Family Trust. The Government intends to present testimony that Sims was Riley Graham's long-time associate and that she was present for his prior federal court proceedings. The Second Superseding Indictment, however, charges the conspiracy from June 2019 to October 2024, more than 10 years after either of Riley Graham's felony convictions. In *Portillo*, the third-party's criminal conviction "overlapped" with the charged conspiracy. *Id.* at 179. Meanwhile, here no such overlap exists. Therefore, the details of these convictions are inadmissible as being highly prejudicial "guilty by association" evidence. *See id.* at 178. This evidence, however, is admissible for impeachment purposes if Riley Graham testifies as a witness.

Accordingly, Sims's request is DENIED in PART and GRANTED in PART, and the Government will be prohibited from mentioning Riley Graham's 2005 money laundering conviction and 2008 fraud conviction and from establishing Sims's intent or her guilt using these convictions. If, however, Riley Graham testifies as a witness, evidence of these convictions may be used for impeachment purposes. The jury will receive a limiting instruction that a coconspirator's criminal activity cannot be used to prove the defendant's guilt and, instead, can only be used for limited purposes. *See id.* at 179-80.

2. Request Two

In her second request, Sims asks the court to prohibit any reference to uncharged acts not noticed to Sims under 404(b)(3). Specifically, Sims identifies: (1) a $250,000.00 payment; (2) the "Herbal Cruz" transaction; (3) the Bureau of Prisons incident report for contraband cell phones; (4) other persons' credit card spending on "gifts, car insurance, sporting goods, restaurants"; (5) the suggestion of a back-dated buy in; and (6) borrowing from other investors in September 2024 and later.[1] The Government, however, contends that the evidence is not extrinsic evidence subject to Rule 404(b), but rather intrinsic evidence.

"'Other acts' evidence is intrinsic when it is inextricably intertwined with the charged offense, when both acts are part of the same criminal episode, or when the 'other act' was a necessary preliminary step toward the completion of the charged crime." *United States v. Williams*, 30 F.4th 263, 267 n.3 (5th Cir. 2022); *United States v. Berreles*, 783 F. App'x 453, 454 (5th Cir. 2019) (quoting *United States v. Crawley*, 533 F.3d 349, 353-54 (5th Cir. 2008)); *accord United States v. Lucas*, 849 F.3d 638, 643 (5th Cir. 2017); *United States v. Kinchen*, 729 F.3d 466, 471 (5th Cir. 2013). Intrinsic evidence is "admissible to complete the story of the crime by proving the immediate context of events in time and place." *United States v. Shaughnessy*, 157 F.4th 378, 388 (5th Cir. 2025). Intrinsic evidence is also admissible to permit the jury to "evaluate all of the circumstances under which the defendant acted." *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010) (citing *United States v. Randall*, 887 F.2d 1262, 1268 (5th Cir.

---

[1] Sims's motion references Item 6. The indictment, however, only charges the conspiracy for conduct occurring from June 2019 to October 2024. The Government, similarly, did not address this point. It states in its response that it is unable to "decipher what evidence Sims is referring to here."

1989)); *accord Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 967 (5th Cir. 2019).

When a conspiracy is charged, courts in the Fifth Circuit give great latitude in classifying evidence as intrinsic. *See United States v. Girod*, 646 F.3d 304, 320 (5th Cir. 2011). Acts committed in furtherance of the charged conspiracy are themselves part of the act charged. *See United States v. Garcia Abrego*, 141 F.3d 142, 175 (5th Cir. 1998) (citing *United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997)). Thus, evidence of such acts constitutes intrinsic evidence—it is direct evidence of the charged conspiracy itself. *See Miller*, 116 F.3d at 682; *United States v. Krout*, 66 F.3d 1420, 1431 (5th Cir. 1995).

The Government explained in its response how the listed events are relevant and probative to how the alleged conspiracy was furthered. First, it asserts that the Mildred Drake Family Trust acquired Carolina Contracting through fraudulent means and took out loans with its line of credit. The $250,000.00 payment was derived from a loan that the coconspirators secured using Carolina Contracting's credit. The $250,000.00 was wired from Crawford to an attorney, Greg Moss, who the Government identifies as "a recent victim of the [Mildred Drake Family Trust]." Therefore, the evidence is intrinsic because it was an act committed in furtherance of the charged conspiracy itself. *See Garcia Abrego*, 141 F.3d at 175.

Similarly, evidence of Riley Graham's possession of cell phones in prison and Defendants' use of credits card on personal expenditures are both acts committed in furtherance of the charged conspiracy. The phone, as the Government avers, was used to lead the conspiracy and to communicate with coconspirators and victims. Likewise, the credit card use illustrates how Defendants achieved the objective of the fraud—making money. Thus, this evidence is likewise

intrinsic because these acts were committed in furtherance of the charged conspiracy itself. *See Garcia Abrego*, 141 F.3d at 175.

Next, evidence of the back-dating of Sims's buy-in contract is also intrinsic. Sims's request, however, focuses on the suggestion that back-dating the contract implies that Sims committed tax fraud. Sims's request is GRANTED to the extent that the Government is precluded from suggesting that Sims's intended to create an opportunity to commit tax fraud.

As to the admission of evidence regarding the back-dated contract, however, the Government contends that the buy-in contract was used to perpetrate the fraud conspiracy. It furthered Defendants scheme to defraud victims through the attempted purchase of Carolina Contracting. Therefore, it is intrinsic as it was another act in the charged conspiracy.

The Herbal Cruz transaction is likewise intrinsic evidence because the transaction gives context as to how Defendants perpetuated the fraud. The Government's response indicates that the funds from the charged conspiracy and the Herbal Cruz transaction were intermingled, and funds from the Herbal Cruz transaction were used to further the Beaumont Line-of-Credit scheme. *See United States v. Freeman*, 434 F.3d 369, 374 (5th Cir. 2005) (finding that evidence was intrinsic when "the funds were co-mingled and used to make lulling payments to investors from both schemes").

The evidence that Sims seeks to prohibit is intrinsic to the crime charged because it is either evidence of an act taken in furtherance of the conspiracy or it explains the story of how the Defendants perpetrated the charged conspiracy. Accordingly, Sims's request is GRANTED in PART and DENIED in PART. The Government is precluded from suggesting that Sims

back-dated the buy-in contract to commit tax fraud as such evidence is prejudicial and irrelevant as to the charged conspiracy.

3. Request Three

Sims's third request asks that the court not pre-admit business records, including the account ending in 5088 on the basis that the Government did not comply with Federal Rule of Evidence 902. On November 16, 2026, however, the Government filed a Notice of Intent to Offer Records (#409)[2] pursuant to Rule 902, and it made the records and certification available for inspection. Thus, Sims's request is DENIED as MOOT.

4. Request Four

Sims's fourth request asks the court to prohibit testimony relaying absence-of-record searches by persons who do not testify. In its response, the Government asserts that it will add Cordero Mitchell ("Mitchell") to its witness list. Mitchell is the party that conducted the Bahamian property search. As such, the Sims's request is DENIED as MOOT.

5. Request Five

Sims's fifth request asks that the court prohibit an agent's testimony that provides an overview on what other documents or evidence will reveal. To the extent that she seeks to bar this type of testimony, Sims's request is DENIED. *See United States v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001) (allowing summary evidence and testimony); *United States v. Tannehill*, 49 F.3d 1049, 1056 (5th Cir. 1995) ("The agent's testimony was helpful to the jury in explaining the charts and the documents he relied upon in preparing them.").

---

[2] This Motion in Limine and the Notice of Intent to Offer Records were filed on the same day.

Sims also requests that the court prohibit an agent from making legal conclusions or otherwise referring to or characterizing her conduct as a scheme, fraud, or conspiracy. In complex cases, however, testimony tying specific exhibits to substantive indictment counts is permissible. *See United States v. Baker*, 923 F.3d 390, 397-98 (5th Cir. 2019). In *Baker*, the Fifth Circuit found that an FBI special agent's testimony in a securities fraud prosecution was permissible summary testimony where an agent's testimony consisted of reading contents of exhibits and sorting through evidence to show how documents related to each other and to charges in the indictment.

Here, this matter has already been declared a complex prosecution (#147). The witness and exhibit lists that the parties submitted indicate that extensive evidence, some of it rather complicated, will be introduced at trial. In light of *Baker*, the type of testimony Sims seeks to prohibit, an agent tying specific evidence to the single-count indictment, is appropriate here. As such, her request is DENIED in PART.

Sims requests that the court prohibit an agent from drawing legal conclusions or otherwise referring to or characterizing her conduct as a "coconspirator," "straw owner," or "nominee." In light of the discussion above, granting this request as to the terms "straw owner" or "nominee" would be too broad. Sims's request is GRANTED in PART as to testimony referring to her a coconspirator. Any testimony drawing a legal conclusion as to Sims's guilt—that she was a part of the conspiracy or was a coconspirator—is impermissible. *See United States v. Daggs*, 448 F. App'x 504, 507 (5th Cir. 2011) (finding testimony that the defendant "was involved in a conspiracy with somebody" was an improper legal conclusion).

6. Request Six

Sims's sixth request asks that the court prohibit the statements of alleged coconspirators. It also requests a *James* determination. A defendant may request a *James* hearing, or determination as in this case, in advance of trial to determine whether such statements are admissible under Rule 801(d)(2)(E) of the Federal Rules of Evidence. *See United States v. James*, 590 F.2d 575, 582 (5th Cir. 1979). The Government opposes Sims's motion, arguing that Defendants are not entitled to a *James* hearing in advance of trial.

"Whether a *James* hearing is necessary in a particular case is within the discretion of the trial court." *United States v. Williams*, 264 F.3d 561, 576 (5th Cir. 2001) (citing *United States v. Fragoso*, 978 F.2d 896, 900 (5th Cir. 1992)); *see United States v. Carreon*, 242 F. App'x 221, 224-25 (5th Cir. 2007); *United States v. Mathis*, 458 F. Supp. 3d 559, 563 (E.D. Tex. 2020). In determining whether the statements are admissible, a district court need not hold a pre-trial hearing and may conditionally admit the challenged statements until a determination of the existence of the Rule 801(d)(2)(E) predicate facts can be appropriately made. *United States v. West*, 58 F.3d 133, 142 (5th Cir. 1995); *United States v. Gonzalez-Balderas*, 11 F.3d 1218, 1224 (5th Cir. 1994) (citing *Fragoso*, 978 F.2d at 900); *see James*, 590 F.2d at 582-83 (district court may conditionally admit co-conspirators' statements); *Mathis*, 458 F. Supp. 3d at 563. In some cases, however, "judicial economy suggests that express findings on admissibility should be made before the coconspirator statements are introduced." *Fragoso*, 978 F.2d at 900. Nevertheless, the decision is a matter "committed to the broad discretion of the trial court." *Id.* (citing *United States v. Cantu*, 557 F.2d 1173, 1180 (5th Cir. 1977)); *Mathis*, 458 F. Supp. 3d at 563.

In this instance, Sims's request does not present a compelling reason that necessitates a pre-trial *James* ruling. Indeed, granting the request for a *James* determination would effectively require the court to hear much of the evidence twice, which would be both wasteful and unnecessary. Deferring a *James* determination "is particularly appropriate in cases" where, as here, "holding a pretrial hearing would, in effect, result in trying the case twice and wasting valuable judicial resources and time." *United States v. Carroll*, No. 99-98, 2000 WL 45870, at *5 (E.D. La. Jan. 20, 2000) (citing Go*nzalez-Balderas*, 11 F.3d at 1223); *accord Mathis*, 458 F. Supp. 3d at 563; *see United States v. Acosta*, 763 F.2d 671, 679 (5th Cir. 1985) (upholding the district court's determination that "if we had to have a separate independent hearing insofar as the conspiracy is concerned, we in effect would be trying this lawsuit two times"); *United States v. Fleifel*, 3:12-CR-318-D(3), 2014 WL 6633049, at *4 (N.D. Tex. Nov. 24, 2014) (denying defendant's request for a hearing to determine the admissibility of coconspirator statements where it "would be burdensome and effectively result in a mini-trial of potentially considerable length").

The court is of the opinion that conducting a pre-trial *James* determination in this case is unwarranted. Accordingly, Sims's request is DENIED.

7. <u>Request Seven</u>

Sims's seventh request asks that the volume of the evidence admitted to prove the existence or the scope of the charged agreement be limited under Rule 403. The Government's response is silent as to this request. As such, it is GRANTED to the extent that Sims requests a contemporaneous limiting instruction that each defendant and the evidence pertaining to that defendant shall be considered separately and individually.

8. Requests Eight and Ten

In her eighth request, Sims asks that the Government be precluded from eliciting testimony regarding a witness's illness, religious standing, and the emotional toll of the alleged events. Her concerns arise from testimony given in Riley Graham's trial where a witness testified that one of the owners of Carolina Contracting was diagnosed with multiple myeloma and that the experience "had a significant result on him."

Similarly, Sims's tenth request asks that the Government be precluded from testifying to matters absent establishing a foundation of personal knowledge before such testimony is elicited. Her concerns as to this request are likewise related to testimony elicited in Riley Graham's trial, wherein a witness described his knowledge as his "understanding" or testified as to what "would have" occurred.

The Government raises no objections to these requests in its response. Given that the Government has previously elicited testimony about a witness's illness, religious standing, and the emotional toll caused by the attempted acquisition of Carolina Contracting and has previously elicited testimony without establishing personal knowledge, there is a likelihood that similar testimony may be offered in this trial. Therefore, Sims's eighth and tenth requests are GRANTED as unopposed.

9. Request Nine

Sims requests that the court prohibit the Government from offering a codefendant's guilty plea as evidence of her guilt. This request is GRANTED. The parties agree that a testifying codefendant's plea agreement may be offered for the purpose of assessing that witness's

credibility. The Government, however, cannot argue or infer that the guilty plea of a codefendant is evidence of the guilt of any defendant currently on trial.

10. Request Eleven

Sims requests that the Government disclose any summary, chart, or calculation it intends to offer, with the underlying records. The disclosure of these documents is governed by the court's discovery order (#40), entered on June 26, 2025. The order requires the Government to permit defense counsel to inspect and copy or photograph any books, papers, or documents that are material to the preparation of the defense or that the Government intends to use in its case-in-chief at trial. Sims's request is GRANTED to the extent that the Government must make available any such summaries, charts, calculations, and underlying records that it intends to use in its case-in-chief.

11. Requests 12 and 13

Two of Sims's requests seemingly ask that the court direct the Government to "essentially follow the rules of evidence." *Packet Intel. LLC*, 2019 WL 1642714, at * 3. Such requests are rarely granted, and Requests 12 and 13 are DENIED as MOOT.

## III. Conclusion

Consistent with the foregoing analysis, Sims's Motion in Limine is GRANTED in PART and DENIED in PART. The Government shall make available to Defendants any summaries, charts, calculations, and underlying records it intends to use in its case-in-chief. Further, the Government is prohibited from discussing, arguing, or offering any evidence on the following matters without first approaching the bench:

1. Evidence of Riley Graham's 2005 money laundering conviction and 2008 fraud conviction except for impeachment purposes or otherwise attributing such evidence to Sims's intent or to her guilt;

2. Any suggestion that Sims intended to create an opportunity to commit tax fraud with the back-dated contract;

2. Eliciting agent testimony characterizing Sims as a "coconspirator"; and

3. Eliciting from any witness testimony of another witness's illness, religious standing, or emotional toll of the attempted acquisition; or eliciting testimony without establishing personal knowledge.

SIGNED at Beaumont, Texas, this 24th day of November, 2026.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE